Fry, J.
delivered the opinion of the majority of the court.—These cases present judgments under the gaming laws, for offences committed before the passage of the act of March 26. 1842.
It is contended that the judgments are erroneous, because the laws existing previous to the said act were repealed by it, and of consequence all previous offences were thereby remitted or discharged.
The question depends, therefore, on the true construction of the act of the 26th of March 1842. The act is in these words : “ That in all recoveries hereafter had for violations of the gaming laws, the fee recovered shall be ten dollars for the commonwealth’s attorney, and the sum of thirty dollars shall be paid to the literary fund in lieu of the sum as at present provided.”
*804 These are brief words, and, we must confess, not free from difficulty. What construction shall we give them ? Do they repeal the previous offences ?
There is no repealing clause; and the words do not jfflport any repeal. So far from it, they imply the continuance of the previous laws. “In all recoveries hereafter had for violations of the gaming laws” &c. What recoveries can be had, or violations occur, under laws that have no existence ? The act manifestly contemplates that the previous laws shall continue in force, and recoveries continue to be had under them.
It is said, however, that though there is no express repeal of the previous laws, there is an implied one: that the act prescribes a new punishment for past offences,— an aggravated punishment,—by increasing the fine from twenty to thirty dollars : that it is inconsistent with the former laws, and, being the last expression of the legislative will, must abrogate them, upon the principle, leges posteriores priores contrarias ábrogant.
The authorities cited at the bar shew, that implied repeals are not favoured; that two affirmative statutes shall coexist if they can, and this notwithstanding the use of general words, whose grammatical construction might imply the contrary. 6 Bac. Abr. 439.*
*805 Let us then enquire why we are obliged to imply a repeal of the previous laws, and discharge of previous offences ? Did the legislature intend such repeal and discharge ? For we admit that in this act, as in all others, we must enquire into the legislative intent, and give effect to it if we can.
Admitting, then, (though some of the judges deny it) that the act varied and increased the punishment prescribed by former laws, the question occurs, to what offences does it apply ? Does it apply to violations committed before its passage, or only to those committed afterwards ? If it applies only to offences committed after its passage, it does not conflict with the former law, and consequently both will stand. If it applies, or can be legally applied, to previous offences, then the conflict will arise, and the last law only will have effect.
Before pursuing this question, we advert to a few general rules of construction.
1. The laws against gaming are to be construed as remedial laws. 2. Such construction shall be made as will give effect to the legislative intent, and not defeat it. Magis valeat quam pereat. S. The construction shall be, as nearly as possible, in conformity with the principles of the common law. 4. If it be possible, a reasonable construction shall be made, and a reasonable and lawful intent imputed, rather than one unreasonable and unlawful. 5. All laws are, or ought to be, prospective in their action. Retrospective laws are odious, and never presumed to be intended, unless by inevitable construction. And ex post facto laws are void. 6. All laws in pari materia should be considered together.
Let us pursue the enquiry with the aid of these principles.
Does the law mean to embrace violations before its passage, and to vary and enlarge the punishment ?
*806 To suppose that the legislature so intended is to suppose, first, that it intended what was unjust in design, and vain and idle in effect. It is to suppose the legislature intended what was wrong in itself, and what it had no power to inflict. Shall we impute this unrighteous and idle purpose to it ? And to what end ? In order that we may give effect to it ? By no means—the plaintiffs in error contend not for that—but in order that we may both deny effect to this new purpose of the assembly, and, whilst we refuse to give it effect, make it abrogate the former law, which it was intended to supply: in other words, that we may make it something, and nothing; give it the power to kill, but only, like the insect, to lose its life in the wound. If the legislature intended to apply the law to former cases, then it cannot take effect; it is a dead letter. If such was not the legislative intent, the question is at an end. And in either case there is no conflict with the old law, and that law remains in full force.
Secondly, to apply the law to former cases makes it ex post facto. It imputes an unreasonable and unlawful purpose to the legislature. It defeats the purpose itself; or, worse than useless, as the plaintiffs contend, abolishes the former punishment, while it fails to inflict the new. It violates the principle that the laws should be prospective. It fails (contrary to the declaration that the laws shall be deemed remedial) to advance the remedy and suppress the mischief contemplated by the laws against gaming, by giving impunity to offenders against them.
For the foregoing reasons, we think the legislature did not intend to apply their enactment to previous of-fences ; and if general words are used that admit of such construction, we are bound to limit their application, and to give them a reasonable and constitutional interpretation. We may even interpolate words for such purpose. Abundant cases, we believe, may be *807 found to this effect. (See cases cited in preceding note.) And to illustrate the subject by an example, suppose the legislature should enact “that in all convictions hereafter had for any violations of the laws against larceny, the party shall be hangedwhat construction would we give it? Would we not say it applied to future violations only, and was even so intended by the legislature, notwithstanding the general words used ? And if we even supposed they intended to apply it to past offences, would we turn such abortive intent into an implied legislative pardon for all such offenders ?
If we limit the act of March 26. 1842 to future offences, then it is to be construed as if it read thus— “ That in all recoveries hereafter had for violations of the gaming laws hereafter committed,” See. Supply these words, or apply the act to future offences only, and the cases before us fall precisely within the principle of Pegram’s case, 1 Leigh 569. In 1825, Pegram had been presented for keeping a faro bank table. At this time, the offence was punishable by imprisonment in the common jail, and by stripes at the discretion of the court. By the act of 1827-8 it was enacted, that whoever should thereafter he guilty of any of the offences &c. should be punished by imprisonment and fine, &c.—changing the punishment. Pegram, who was not arrested until after this act went into effect, insisted that he was entitled to be discharged. But the court said: “In the Case of Attoo v. The Commonwealth, 2 Virg. Ca. p. 382. it was decided, that where a new statute prescribes a new punishment for an offence which had been previously punishable otherwise, and the new statute repeals all laws which come within its purview, but does not provide that offences committed before the operation of the new law, shall be punished under the old, such repeal operates as a discharge of all such offenders. But that case is very different from *808 this. There the law repealed and annulled the punishment enacted before that time against the offenders: here the act of 1827-8 does not, either expressly or impliedly, repeal the previous punishment prescribed ky act 0f 1822-3, except in the case of future offences. There is no repealing clause in the act of 1827-8; and although the principle is correct that leges posteriores priores abrogant, yet they only abrogate them from the time that the latter law is passed, or goes into effect. The principle on which this rule prevails is, that the latter statute being incompatible with the former, they cannot exist together, and the latest expression of the will of the legislature is the law. But there is no incompatibility in the statutes now under consideration. A punishment affixed to an offence prior to the 1st May 1828, is not incompatible with a different punishment, either lighter or more severe; affixed to the same offence subsequent to that date. They may both well stand together.”
The reasoning in the above case of Pegram, under the construction which we give to the act of 1842, answers all the cases which have been cited before us on the effect of the repeal of statutes.
We think the conclusion we have come to, best effects the intention of the legislature. It puts a reasonable and just construction upon the act, by making it provide punishment for future cases only, without attempting to provide one for past offences. If the legislature intended to apply it to past offences, and to punish them higher than before, the attempt is abortive ; and an abortive attempt to punish more severely, should not be converted into an implied or intended dispensation from all punishment whatsoever. We thihk that we best subserve the legislative intent to punish, by leaving in force the punishment lawfully inflicted, though we deny that unlawfully devised.
*809 The judges are not unanimous in this opinion. Some of them think that the court below committed no error, because the act does not vary or increase the punishment. Some of them are for reversing the judgments and discharging the offenders altogether: and one of them thinks that the act was intended to apply to former cases, but is void as to the fine, and can affect only the taxation of costs.
As to the question arising on the process in one of the cases, a majority of the judges think there is no error which should affect the judgment of the court. Some of the judges think it was competent to the court to award the process; some, that if any error was committed in that respect, it is not now material; while two of them think there was error in that respect, and that, for such error, the judgment should be reversed, and the cause remanded for a summons to issue, &c.

 Note by the judge. The statute of 29 Car. 2. ch. 3. enacted, “that from and after the 24th day of June 1677, no action shall be brought to charge any person upon any agreement made upon consideration of marriage, unless the agreement upon which such action shall be brought &c. shall be in writing and signed.” After this statute, an action was brought upon a promise in consideration of marriage, not in writing, made before the act passed. Upon special verdict found, it was adjudged for the plaintiff. And by the court: “ It cannot be presumed that the statute was to have a retrospect, so as to take away a right of action which the plaintiff was entitled to before the time of its commencement.” Gilmore v. Shuter, 2 Lev. 227. And see Warder v. Arell, 2 Wash. 282. Wallace & ux. v. Taliaferro & ux. 2 Call 447. Elliott’s ex’or v. Lyell, 3 Call 268. Commonwealth v. Hewitt, 2 Hen. & Munf. 181.